IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JEROME WANT,
    *Plaintiff*,

v.

BULLDOG FEDERAL CREDIT
UNION, *et al.*,
    *Defendants*.

Civil Action No. ELH-19-2827

**MEMORANDUM OPINION**

In an Amended Complaint (ECF 6), Jerome Want, the self-represented plaintiff, lodged a host of claims against multiple defendants, arising out of a dispute concerning his credit union account. He has sued Bulldog Federal Credit Union ("Bulldog" or "BFCU");[1] David Barrett, the president of Bulldog; Bulldog's Board of Directors (the "Board"); the National Credit Union Administration (the "NCUA"); Rodney Hood, the president of NCUA; and Jessica Barnes, an employee of Bulldog.[2] The suit is supported by several exhibits. ECF 1-1 to ECF 1-6; ECF 6-1. As to BFCU, Barrett, the Board, and Barnes, Mr. Want alleges a "Violation of the U.S. Fair Credit Reporting Act" (the "FCRA") (Count I); "Retaliation" (Count II); "Tortious Interference" (Count III); "Defamation" (Count IV); "Fraud & Breach of Contract" (Count V); "Violation of the Americans with Disability Act [sic]" (Count VI); "Gross Mismanagement & Malfeasance" (Count

---

[1] Mr. Want spells the name of the credit union "Bull Dog," but defendant spells its name "Bulldog." *See* ECF 15. I shall adopt defendant's spelling.

[2] Mr. Want initially named **Carolyn** Barnes as a defendant. ECF 1. But, his Amended Complaint substituted **Jessica** Barnes as a defendant and did not include Carolyn Barnes. ECF 6. Accordingly, on October 31, 2019, I dismissed Carolyn Barnes from the suit. ECF 7.

Summons was returned executed as to Rodney Hood and the NCUA on November 19, 2019 and November 13, 2019, respectively. ECF 16. However, neither has responded to the suit.

VII); and "Lack of Good Faith" (ECF 1, ¶ 16). As to NCUA, Want alleges "Malfeasance & Failure to Perform" (Count I); "Breach of Contract" (Count II); "Negligence" (Count III); "Lack of Good Faith" (Count IV); and "Fraud" (Count V).

Bulldog and Barrett have jointly answered the Amended Complaint. ECF 15. Barnes has filed a motion to dismiss the Amended Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF 10 (the "Barnes Motion"). Similarly, the Board has moved to dismiss for failure to state a claim. ECF 14 (the "Board Motion").

Two notices were sent to plaintiff, advising him of his right to respond to the motions. ECF 12; ECF 17. He was also advised that failure to respond might lead to dismissal of the case. *Id.* In response, Mr. Want requested an extension of time to respond to the motions (ECF 18), and the Court granted the request. ECF 20. Nevertheless, plaintiff did not respond. *See* Docket. Then, on April 20, 2020, Mr. Want filed a "Motion to Reinstate" (ECF 21), asking the Court to reinstate his case. *Id.* By Order of April 21, 2020, the Court informed Mr. Want that the case had never been closed, and directed him to respond to the motions by May 6, 2020. ECF 22. Mr. Want failed to respond. *See* Docket.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the motions.

I.   **Factual Background**[3]

Mr. Want is a self-proclaimed "former world class management consultant to major and small companies" before he was "seriously injured and disabled." ECF 6, ¶ 16. In 2016, Mr. Want became a member of Bulldog by paying a "membership fee of $25 into a savings account and

---

[3] At this juncture, I must assume the truth of the facts as alleged in the suit. *See Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). However, the facts as alleged are sometimes difficult to comprehend.

maintaining at least that amount in the account." *Id.* ¶ 3. He "simultaneously opened a checking account. . . ." *Id.* Mr. Want states he "intentionally left a balance of $3.04" in the checking account, and intended to withdraw that amount to close the account. *Id.*

In May 2019, Mr. Want wrote a check for $950 to pay off a consumer loan. *Id.* But, he mistakenly wrote a second check, which was in the sum of $1,000. *Id.* Plaintiff contends that the $950 payment should have paid off the loan account, "or at least made [the account] current through the end of the year." *Id.*

Mr. Want alleges that while he "was away on a family emergency," his friend mailed the $1,000 check. *Id.*[4] Mr. Want recognizes that the mix-up with the checks was "the fault of the Plaintiff." *Id.* But, he alleges that he immediately contacted Bulldog to instruct it not to deposit the $1000 check. *Id.* However, the $1000 check had already been deposited to the checking account. *Id.* According to plaintiff, he subsequently notified Bulldog that he was closing the checking account. *Id.*

Bulldog charged three overdraft fees to Mr. Want's account and informed him that BFCU was closing the account. *Id.* Mr. Want contends that these actions took place "most likely on the instructions of David Barrett. . . ." *Id.* According to Mr. Want, he had never previously overdrawn his account during his three-year relationship with Bulldog. *Id.* ¶¶ 3, 7. Indeed, he claims that he had a "spotless" record with credit reporting agencies. *Id.* ¶ 5.

Plaintiff contends that Bulldog "rushed to report this to credit reporting agencies." *Id.* And, he contends that Bulldog did not "refund the Plaintiff's savings account deposit which was for membership." *Id.* ¶ 3. Mr. Want maintains that the reports made by BFCU to credit-reporting

---

[4] Plaintiff does not identify the accounts on which the checks were drawn, or who or what hold the consumer loan, or the basis for an overdraft.

agencies were false, because he had previously made the $950 payment on his loan. *Id.* ¶ 5. Further, he alleges that Bulldog falsely reported to credit reporting agencies that his unpaid overdraft fees were $100. *Id.* ¶ 7. Mr. Want asserts that Bulldog, Barnes, and Barrett "failed to explain their dunning notice." *Id.* ¶ 5.

Mr. Want asserts that for the first time since junior high school, he has not been able to open an account, and it is because of Bulldog's false reports to credit reporting agencies. *Id.* ¶ 12. According to plaintiff, multiple banking institutions have refused to open an account for him because of the reports Bulldog sent to "Chexsystems, Experian, and others." *Id.*

Plaintiff also contends that on October 8, presumably in 2019, Bulldog sent Mr. Want a past due notice for the loan in the sum of $69.17, although he had sent a payment of $70. *Id.* ¶ 5. *Id.* Plaintiff alleges that the $950 payment sent in May should have paid off the account. *Id.* According to the plaintiff, despite numerous notices and letters from his attorney, Bulldog has not accounted for the $950 sent in May to pay off the account. *Id.*

Mr. Want has submitted with the Amended Complaint a copy of a money order for $70, made out to "Bull Dog Fed Credit Union." ECF 6-1.[5] The top left corner of the money order reads: "For Jerome Want Loan." *Id.* And, the memo line reads: "Acceptance indicates payment in full for loan." *Id.*

On April 26, 2019, Want sent a lengthy email to Barrett. ECF 1-2. Mr. Want detailed his repeated attempts to contact members of Bulldog's staff, and he sought an emergency loan of $80. *Id.* at 1-3. Barrett responded, *id.* at 1:

> Mr. Want,
>
> We have been extremely patient with you in the past. That posture stops today. Your requests have all been responded to and yet you keep asking the same

---

[5] I was unable to locate a date on the document.

questions, which makes absolutely no sense to me.  You have wasted enough of my staff time and now my time, this will not be allowed to continue either.  I suggest you stop your constant badgering of my staff or I will contact the Police and press charges of harassment.

Do not contact us again.
Thank you.

Dave Barrett

Mr. Want asserts that he was unable to finish business at Bulldog because of Mr. Barrett's threat that barred plaintiff's contact with the staff.  *Id.* ¶ 17. Further, plaintiff contends that BFCU's customer service failed to correct the security issues without changing plaintiff's login information.  *Id.* ¶ 8.  He alleges that on multiple occasions he had to contact branch managers and BFCU's IT employee because of security issues. *Id.*  As a result, plaintiff was allegedly locked out of his banking account multiple times, which he relied on to monitor and avoid overdrawing his account.  *Id.*

Plaintiff maintains that whenever he had business at a branch, he was "courteous and matter of fact in his dealings." *Id.* ¶ 9.  Yet, despite his being courteous and professional, Bulldog's IT employee, who Mr. Want identifies only as "Justin," was instructed never to communicate with him again.  *Id.* ¶ 8.  And, on one occasion, a branch representative was "hostile and unhelpful." *Id.* ¶ 9.  Mr. Want has submitted a copy of an email exchange with a branch manager, who instructed him to direct inquiries and concerns to the credit union's "Supervisory Committee." ECF 1-5.

Mr. Want also alleges that Bulldog refused to disclose the names of Board members, in violation of NCUA rules. ECF 6, ¶ 16.  He asserts that he was barred from speaking "with Barrett's superiors, the 'supervisory committee.'" *Id.*  And, he alleges: "Neither the Supervisory board not Barrett have engaged in any independent management audit to determine if customers and staff

5

are satisfied and if the [credit union] is an 'EFFECTIVE INSTITUTION.'" *Id.* As a result of this, he claims that Barrett and the Board engaged in "gross mismanagement." *Id.*

In May 2019, Mr. Want contacted NCUA regarding Bulldog. *Id.* ¶ 23. He contends that Morgan Rogers, the NCUA's Director of Consumer Affairs, informed him that Bulldog had failed to respond to the complaint within the required 60 days. *Id*; *see* ECF 1-6. Mr. Want provided an email from Rogers regarding the status of the investigation into plaintiff's complaint against Bulldog. ECF 1-6.

Plaintiff alleges that various employees of NCUA, including Rogers, failed to respond to his inquires, did not investigate BFCU, and otherwise failed to meet their "commitments to the Plaintiff." ECF 6, ¶¶ 17, 21, 22, 23. And, he complains that Barnes sent "dunning notices" to him. *Id.* ¶ 17.

## II.  Legal Standard

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the

rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (citation omitted)); *see also Paradise Wire & Cable*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts]

in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In the context of a motion to dismiss, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards*, 178 F.3d at 243).  But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009).  Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'"  *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). Of relevance here, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."

9

*Id*.  Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

Mr. Want attached several exhibits to the Complaint and one exhibit to the Amended Complaint.  ECF 1-2 to ECF 1-6; ECF 6-1.  The Amended Complaint does not incorporate the exhibits filed with the original Complaint.  And, "an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (citing 6 Charles Alan Wright, Arthur Miller & Mary Kay Kane, FEDERAL PRACTICE & PROCEDURE § 1476 (2d ed. 1990)) ("A pleading that has been amended ... supersedes the pleading it modifies ...").  As a result, those exhibits actually are not part of the suit.  Because of Mr. Want's pro se status, however, I shall overlook his failure to resubmit the original exhibits.

And, because plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), aff'd, 584 F. App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."); aff'd, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant.  See *Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).  Therefore, a court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he is self-represented.  *Beaudett v. City of*

*Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint). As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278.

### III.   Discussion

As noted, Mr. Want asserts the following counts against Barnes and the Board: Violation of the FCRA (ECF 6, ¶ 7), Retaliation (*id.* ¶ 8), "Tortious Interference" (*id.* ¶ 12), Defamation (*id.* ¶ 13)," Fraud & Breach of Contract" (*id.* ¶ 14), "Violation of the Americans With Disability Act" (*id.* ¶ 15), "Gross Mismanagement & Malfeasance" (*id.* ¶ 16), and "Lack of Good Faith." *Id.* ¶ 17.

Mr. Want's allegations as to Barnes are minimal. He claims that Bulldog, Barrett, and Barnes "failed to explain their dunning notice." ECF 6, ¶ 5. And, he also contends: "[T]he bank via Jessica Barnes has sent dunning notices to the Plaintiff despite Plaintiff's written requests that they clarify."[6] *Id.* ¶ 17; ECF 6-1 at 9.

Mr. Want's specific allegations against the Board are similarly thin. He claims: "Neither the Supervisory Board nor Barrett have engaged in any independent management audit to determine if customers and staff are satisfied and if the [credit union] is an 'EFFECTIVE

---

[6] Page 9 appears to be missing from the Amended Complaint, but the page is present in the redlined version Mr. Want submitted. *See* ECF 6-2 at 9.

INSTITUTION.'" *Id.* ¶ 16.  He also states: "It is clear that from how the [credit union] functions, that its supervisory board and its president, Barrett, have engaged in gross mismanagement." *Id.*

Rule 8 of the Federal Rules of Civil Procedure sets forth the "baseline standard to which all complaints must adhere." *Plumhoff v. Cent. Mortg. Co.*, 286 F. Supp. 3d 699, 701 (D. Md. 2017).  Under Rule 8(a), a complaint must "contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2).  The rule also requires that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P 8(d)(1).  The goal of Rule 8 is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); WRIGHT & MILLER, § 1202 (describing the objectives of Rule 8).

To be sure, courts must generously construe the pleadings of a self-represented plaintiff.  *Erickson*, 551 U.S. at 94.  But, "'even *pro se* litigants [must] state their claims in a[n] understandable and efficient manner.'" *Plumhoff*, 286 F. Supp. 3d at 702 (alterations in *Plumhoff*) (quoting *Stone v. Warfield*, 184 F.R.D. 553, 555 (D. Md. 1999)); *see also Adam v. Wells Fargo Bank, N.A.*, JFM-9-cv-2387, 2010 WL 3001160, at *3 (D. Md. July 28, 2010) ("[T]he leeway extended to a *pro se* plaintiff must be tempered to require the plaintiff to comply with the Federal Rules of Civil Procedure, including the pleading requirements of Rule 8.").  The court owes the plaintiff no duty to wade through filings in search of viable claims.  *See Plumhoff,* 286 F. Supp. 3d at 702; *see also Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007) ("It [i]s not the district court's job to stitch together cognizable claims for relief from the wholly deficient pleading that [plaintiff] filed.").

Whether a complaint falls short of Rule 8 turns on "various factors, including the length and complexity of the complaint; whether the complaint was clear enough to enable the defendant

to know how to defend himself; and whether the plaintiff was represented by counsel." *Sewarz v. Long*, 407 F. App'x 718, 719 (4th Cir. 2011) (internal citations omitted). A complaint does not run afoul of Rule 8 merely because it is bloated with redundant allegations. *See id.* (finding district court erred in dismissing 33-page complaint where the allegations were "intelligible and clearly delineated"); *see also United States ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Surplusage can and should be ignored."). Nor does the occasional lapse in clarity doom a complaint.

Here, plaintiff's Amended Complaint as to Barnes and the Board contains insufficient allegations to sustain a claim. As to Barnes, plaintiff merely asserts that, on behalf of the Bank, she sent notices to plaintiff. The allegations as to the Board's alleged mismanagement are also vague and conclusory. The gravamen of Mr. Want's Amended Complaint appears to be his treatment by Bulldog, Barrett, and the NCUA. His allegations as to Barnes and the Board are simply not robust enough to justify their inclusion in this litigation. Accordingly, I shall dismiss them from the suit.

## IV. Conclusion

For the aforementioned reasons, I shall grant the Barnes Motion and the Board Motion. Accordingly, I shall dismiss the suit, without prejudice, as to Barnes and the Board.

A separate Order follows.

Date: July 6, 2020 /s/_____
Ellen L. Hollander
United States District Judge